IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | 12 CR 172-2 |
| | ) | |
| Chadia Abuied, | ) | |
|     Defendant | ) | |

SENTENCING MEMORANDUM

NOW COMES Chadia Abueid, by her attorney Robert G. Clarke, submitting her sentencing memorandum as follows:

Presentence Report

Defendant agrees with the guideline calculations made by probation officer Ms. Malissa Groth; the net offense level for the charged crime is 17 and the criminal history category is I, netting an advisory guideline range of 24 to 30 months. Additionally, the statutory penalties available to the court include probation, pursuant to 18 U.S.C. Section 3561 (c) (1), since the offense pled to is a Class 4 Felony, the least serious of all the felonies.

Furthermore, counsel urges that the court consider the recommendation of the probation department that a "potential ground" for a "departure" is contained in the language of USSG Sec. 5 H 1.6, the family ties provision. Counsel shall expand on this basis at the end of this memo, first addressing other factors as possible bases for the imposition of a sentence of probation.

18 USC 3553  Factors

Nature of the Offense and Abueid's Participation

This prosecution of Ms. Abueid is part of a large scale effort by the government to shut down the illegal sale of cigarettes both by people using fraudulent tax stamps or no stamps at all.  The targets of this wide ranging investigation numbered at least 20 individuals most of whom were charged in related cases either pending or already concluded before other judges in the Northern District of Illinois.

It is the contention of counsel that although Ms. Abueid  played a role in the scheme to sell the above described cigarettes, she did not play a substantial role in initiating the operation or in directing its many aspects of supply and distribution.  The government's efforts to eradicate this illegal business of tax avoidance entailed the sale of approximately 1 million cartons of unstamped cigarettes in exchange for approximately 27 million dollars to about 20 separate individuals.  Defendant concedes that legitimate sales of taxed cigarettes constitute a substantial source of income for state and local governments.

But unlike the big "players,"Ms. Abueid became involved on a very basic level in parking-lot  type exchanges with other co-defendants, especially Firas El Mataria and Ammar El Malaria.  These initial transactions were as small at 30 to 60 cartons at a time. Jaber, her sister, and Abueid started with no money.  These modest beginnings  grew substantially when she and her sister were introduced to the supply depot where the illegal products were centrally located and from which contraband was distributed by an individual working for the ATF.

It should be noted that the substantial increase in the volume of purchases made my Abueid was not the result of her strategic acumen in the ways of the contraband business but the result of the efficiency of the centralized operation of the source, a confidential informant operating at the direction of the government whose operation needed, we concede, to be extensive and substantial to have an impact on the overall widespread tax avoidance scheme. [1]

While transactions for the contraband grew in frequency and size, ultimately numbering at least 29 deals engaged in by the sisters and leading to an undisputed loss of over $900,000 in tax revenue ensuing from the illicit sale of 27,834 cartons, the scale of their involvement, while surely not minimal, was substantially less than that of many other defendants. For instance, the two men who offered the first opportunity to the sisters, Firas and Ammar, purchased approximately 128, 850 cartons for $3.6 million dollars, avoiding $3.8 million in taxes, a substantially greater volume than the sisters' sales and tax avoidance. Firas' guidelines were 41 to 51 months but he received 13 months, having three criminal history points and having committed the crime while on probation.

Another participant in the overall scheme, Zalfiquar Alvi, who received a year to a year and a day in prison bought 158,000 cartons for nearly five million dollars avoiding almost 4 million dollars in tax revenue to local government.

Further illustrating the smaller scale of Abueid's involvement is the fact that the number of cartons sold in the Alvi and Mataria cases was four to five times greater in volume

---

[1] Blaming the government enforcement effort for the magnitude or duration of Abueid's crime is not the intention here since entrapment is certainly not available to defendant. What is legitimately emphasized here, we believe, is that the scale of her involvement went far beyond her experience and capacity, whatever the reason.

3

than the number bought and sold by defendant Abueid and her sister. Yet, Ammar El Mataria received a sentence of probation and some home confinement. Additionally, Mr. Alvi had pled to one count of filing a false income tax return and had engaged in the buying and selling of cigarette contraband on 66 occasions, quite in excess of the behavior of Abueid. Alvi's guidelines were 41 to 51 months. He received jail time.

To further illustrate the smaller scale of Abueid's involvement, we turn to the operation of Mustafa Shaikah, who purchased 350,000 cartons of cigarettes over a period of two years for $9,000,000.00.

Some of the other participants in this rather large operation whose level of involvement was comparable to that of Ms. Abueid, received probation as a penalty. For instance, Mr. John James was sentenced to probation, partially on the basis family circumstances, while having an advisory guideline range of 30 to37 months. Ms. Abueid's advisory guidelines are 24 to 30 months.[2]

It bears repeating that Abueid began her involvement at a low level, was never in a position to control the volume of illicit business nor did she direct it. Also, the volume of transactions was substantially less in her case than that of many other participants. Defendants who received any jail time were typically either major players, e.g. Shaikah, who sold millions and purchased millions in contraband, or individuals who were guilty of criminal activity collateral to the cigarette scheme, e.g. firearms such as Khaled Nassar, or who were on some supervision at the time of the offense and participated in the scheme at a higher level such as Firas El Mataria.

---

[2] James had a cooperation agreement but still faced at least 15 months after the discount agreed to.

4

While others were making the "big bucks" in the purchase and sale of contraband on an enormous scale, Ms. Abueid was apparently not even in charge of her rate of remuneration; she started out netting the royal sum of $.50 a carton which was gradually increased to $3.00 per carton, she states. PSR. Pg. 6, para. 15.

Lastly, and speculatively, since we infer from the ATF reports, there were three relevant "species" of defendants in this cigarette scheme; some who clearly were involved in a substantial contraband business before the government "sting," e.g. (first category of defendant) Mustafa Shaikh, who showed up at the Hickory Hills ATF undercover warehouse on September 27, 2011 with $553, 500 in cash to purchase 21,930 cartons in one fell swoop. A second type of defendant began more modestly and was without prior "business" experience in this type of illegal sale of contraband but, unfortunately, branched out into gun or drug sales. Cf. the Nassar brothers discussed above. The third type of defendant is one without any prior criminal involvement. Chadia Abueid, who began in a parking lot without any money, having cigarettes "fronted" to her and her sister so they could sell them and re invest their small profit in yet more cigarettes, belongs in the third category of defendant. Significantly, this third category of defendant eschews the gun and drug possibilities. Notably, defendant John James falls in this category and has the same "offense" characteristics as Ms. Abueid: he, we argue, appropriately received probation. Additionally, as noted above, Amman El Mataria also falls into this category.

Reinforcing counsel's estimate of the relative "categories" of defendants in this case, on an ever diminishing scale of culpability, is the way Chadia Abueid participated in the forbidden

transactions. As noted above, she did not direct the activity, in the sense of deciding the "when, where and how" of operations. The price setting negotiations were not done by Chadia but by her sister, according to the conversations and ATF reports seen by counsel.

Abueid's manner and level of participation in the cigarette scheme is comparable to that of Ammar El Mataria. In El Mataria's case, according to the government's submission in 12 CR 171, the facts show that Ammar's brother Firas had a "stronger hand" in the conspiracy than did Ammar. Additionally, brother Firas "negotiated most of the transactions with the confidential informant," according to the government. Both these descriptions apply to the relationship between Chadia, her sister, and the confidential informant. Ms. Abueid, we think a fair reading of the translated transcripts and AFT reports demonstrates, had little or no hand in the nitty gritty business of bargaining that inevitably accompanies the purchase and sale of contraband.

Again, Ammar was given a sentence of probation and some home confinement; we think the circumstances of the offense and Ms. Abueid's participation therein alone justify a no greater sentence than probation be imposed on her. Further substantiation is the fact that Abueid's volume of sales was far less than that of Firas and Amman's.

While Mr. James, the other recipient of probation, had a cooperation agreement with the government, it has been noted in the presentence report that Ms. Abueid rather quickly relented in admitting her guilt to arresting agents and even helped, to the best of her ability, to identify the individuals from whom she and her sister obtained counterfeit tax stamps. PSR, pg. 6 Para. 15.

6

Relationship with Co-Defendant

While Ms. Abueid does not intend to blame her sister for her involvement in the instant offense, the record of the charges filed in this case reveals that her sister was indeed enmeshed in illegal activity far beyond that of Chadia. Counsel must comment, however, on the contrasting roles that Ms. Abueid and her sister played in the scheme and indeed, in the expanding role of her sister beyond illegal cigarette sales. These are unwelcome but stubborn facts culled by counsel from the record.

The government has noted in various submissions to different courts in related cases that the unlawful activities of many targets went far beyond cigarettes and their taxes. For instance, in the case of U.S. v El Mataria, cited above regarding volume of sales and taxes avoided, the government noted that approximately 262 firearms and five kilos of cocaine were obtained by various targets in the operation.

In fact, when a CHS proposed to codefendant Jaber that she secure some cocaine the sister insisted that no word be mentioned to Chadia regarding the proposal. This admonition, it seems clear in context, was made because Ms. Abueid would have objected to such activity had she been asked or even informed that it was "afoot."

Additionally, although Chadia Abueid participated in the sale of counterfeit tax stamps, it was Victoria Jaber, according to numerous government memoranda in related cases, who was the source of the supply of fake tax stamps. Indeed, counsel points out, that according to the government, it was Victoria Jaber who introduced the CHS to Firas Al Mataria for the

7

purpose of his buying fake tax stamps. Consequently, Jaber became CHS's source of fake tax stamps, according to government filings.

## OFFENDER CHARACTERISTICS

Ms. Chadia Abueid's personal history and characteristics comport perfectly with the request for a sentence of probation and the aims of the statute to punish proportionately, to deter sufficiently and to uphold the dignity of the law.

She is a hard working immigrant citizen caring virtually singly, for a small child in a difficult family situation. The household arrangement under which she lives is rife with emotional conflicts and disappointments springing from relations with her mother in law and with her own husband, who seems incapable of affording the couple's only child, Nidal, with the help and care ordinarily expected from a father and a husband.

The probation officer accurately noted these deficiencies which, whenever they become the subject of discussion with counsel, cause open emotional agitation. Ms. Abueid is virtually the only caretaker for her young son Nidal.

Nidal suffers from an acute sinus abnormality which has caused extreme discomfort for the child and an added challenge for his mother. He has been on medication for months regarding the nasal malady but has been scheduled for corrective surgery in early December. A letter from the doctor is attached.

Ms. Abueid is employed full time with taking care of her home and child, her mother-in-law "delegating" to her virtually the entire responsibility for maintenance and cleanliness, and

even cooking. In addition to her substantial "domestic" responsibilities, she spends three days a week delivering confectionaries to gas stations. She purchases small quantities of Hostess cupcakes from a La Casa grocery store and re-sells them to gas stations in the south west suburbs. Her husband works delivering bread.

### Specific and General Deterrence

Deterrence of a personal sort, that is assuring defendant will not again offend, can be accomplished by sentencing Abueid to probation. Her personal integrity is demonstrated by her true repentance and sorrow over having engaged in any illegal activity. Additionally, we submit that she has shown her commitment to a moral code, though not a specific code shared by all people of integrity and good will, but a matter of deep conviction to her as a Muslim, in her refusal of an abortion in 2003 upon learning that a child she bore was afflicted by Downs Syndrome. While we do not urge on the court the notion that adherence to a religious ideal is necessarily predictive of personal adherence to the dictates of public law, her obedience to personal and religiously influenced perceptions of right and wrong was surely demonstrated by her decision in 2003 regarding her child. PSR pg. 10, para. 50

Ms Abueid will not offend again.

As to generalized deterrence, jailing her is not a reasonable or necessary. Her conviction, the imposition of a probationary period and an order of restitution provides sufficient general deterrence given the degree and nature of her participation in the tax scheme. It is especially appropriate to limit punishment to probation given her utter lack of any criminal behavior at any time prior to this offense.

Summary of 3553 Factors

Lastly, she is not only similarly situated with two of the other defendants who received probation, her case has the added aspect of a vulnerable child whose everyday health and happiness depend on her. As the probation officer noted, family ties can be powerful factors in fashioning a sentence where a parent is truly the only real parent. Of course, many defendants have great family burdens and responsibilities. In Chadia Abueid's case, however, the family ties dovetail with offense and personal characteristics; she did not have a strong hand in the operation of the scheme, she did no negotiating with the principal CHS in the scheme, she set no prices in the enterprise, she did not control the volume of business, she did not introduce any other schemer to a wider type of illegality, she did not commit any other crime in the drug or gun arena and she has an utterly clean past without even a prior arrest. Coupled with that, she is a hardworking mother who is vitally important to the health and vitality of her young son.

Wherefore, counsel asks that the court impose a sentence of probation on defendant or a short time of home confinement and probation on defendant if the court deems it appropriate.

Respectfully Submitted,

s/Robert G. Clarke, Attorney

NOTICE OF FILING-PROOF OF SERVICE

I hereby certify that I have filed this sentencing memorandum for Chadia Abueid, this 19th day of November, 2014 with the clerk of the court using the CM/ECF system, which filing will send notification of such filing to the other CM/ECF participants. Additionally, counsel has hand delivered numerous hard copies of letters to the court and to the Assistant U.S. Attorney this morning.

<u>s/Robert G. Clarke, Attorney</u>